UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 4:15-cr-40021-TSH |
| PATRICIA KWIATKOWSKI | ) ) ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

In a classic case of biting the hand that feeds, the defendant stole over $128,000 from the government while also relying on the government for subsidized housing and medical care, disability benefits, and food stamps.  Thus, the United States respectfully recommends that the Court sentence the defendant to five months of incarceration followed by twelve months of supervised release, with the first five months of supervised release to be served in community confinement.[1]  Pursuant to the plea agreement, the parties jointly recommend that the Court order restitution of $128,101 to the Social Security Administration ("SSA") and $2,391 to the U.S. Department of Housing and Urban Development ("HUD").  Several factors support the government's recommended sentence.

*The nature, circumstances, and seriousness of the offense*

The nature, circumstances, and seriousness of the offense justify a prison sentence.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A).  The defendant stole $128,101 from SSA by repeatedly accessing her deceased parents' bank account, into which SSA continued to deposit her late father's benefits.  She spent about $62,000 of the Social Security money by signing her late

---

[1] This represents the low end of the guideline sentencing range that would apply under the forthcoming revised version of section 2B1.1(b)(1) of the Guidelines: offense level 12, criminal history category I, Zone C.  See http://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20150430_RF_Amendments.pdf at 13; see also Plea Agreement, docket no. 4, § 4(a).

parents' names on more than 130 checks that she wrote from the account. She also made more than 150 ATM withdrawals totaling about $40,000 and spent the rest of the money, about $26,000, on retail purchases and online bill payments. She engaged in this pattern of theft from 2006 to 2014 (PSR ¶ 10). During this entire time, she was already receiving her own SSA disability benefits of about $1,000 per month (PSR ¶ 13, 95).

And then she wanted more. In 2009, she began receiving food stamps. In 2011, she began receiving MassHealth benefits. In 2013, she began receiving subsidized housing. Naturally, she did not inform these government programs that she was already stealing more than $1,000 per month from SSA via her late parents' bank account. Because these three need-based government programs did not know the defendant's true total income, they approved her for thousands of dollars in additional benefits. (PSR ¶¶ 13-19(a)).

Although the defendant told investigators that she stole $128,101 because she "needed the money to survive," this rings hollow (PSR ¶ 12). The government provided for the defendant's survival by giving her more than $1,000 per month in disability benefits, plus food stamps and subsidized housing and health care. She did not need to steal an additional $1,220 to $1,449 per month to survive. A glimpse at the defendant's spending habits underscores this point. She spends $190 per month on cable television (PSR ¶ 96). Bank statements for February 2009 to March 2013 (filed separately under seal) reflect that she spent over $4,000 at home décor retailers, including more than $600 at the high-end retailer Pottery Barn; $1,610 on the social networking website Facebook.com; $897 on home shopping television networks such as QVC and HSN; $550 at coffee retailers such as Keurig; $427 at Sephora, a cosmetics retailer; $340 at Bidz, an online jewelry retailer; $165 at the Yankee Candle Company; and more than $5,000 at

general retailers such as Overstock.com, Macy's, Amazon.com, Target, T. J. Maxx, and Marshall's.[2]  A sampling of individual purchases includes the following:

| Date | Amount | Retailer |
|---|---|---|
| 7-8-2009 | $ 186.59 | Retro Barn Country Linens |
| 10-16-2009 | $ 143.19 | Overstock.com |
| 12-9-2009 | $ 109.85 | Electronic Bonanza |
| 1-14-2010 | $ 143.44 | Pottery Barn |
| 4-5-2010 | $ 161.14 | Bidz.com (jewelry retailer) |
| 6-8-2010 | $ 107.81 | IceCreamSource.com |
| 10-4-2010 | $ 218.96 | Lake Erie Gifts & Décor |
| 12-8-2010 | $ 140.56 | Country Curtains |
| 2-4-2011 | $ 54.95 | Godiva Chocolates |
| 2-16-2011 | $ 175.36 | Macy's |
| 3-7-2011 | $ 160.80 | Appleseed Primitives (home décor retailer) |
| 3-8-2011 | $ 255.08 | Marshalls |
| 8-8-2011 | $ 228.19 | West Elm (home décor retailer) |
| 3-7-2012 | $ 259.70 | Beth's Country Primitive Home Décor |
| 4-3-2012 | $ 248.74 | T. J. Maxx |
| 5-4-2012 | $ 163.60 | Completely Country |
| 11-28-2012 | $ 276.68 | Pottery Barn |
| 12-3-2012 | $ 135.00 | Etsy.com (online retailer of vintage and artisan goods) |
| 1-4-2013 | $ 223.05 | T. J. Maxx |

Such spending is hardly necessary "to survive."  In short, the defendant committed forgeries, made false statements, and stole a six-figure sum of money from the government over eight years, and she used a significant portion of that money as a slush fund for frivolous shopping.  This conduct justifies a prison sentence.

*Specific deterrence*

The history and characteristics of the defendant and the need to protect the public from further crimes of the defendant also justify a prison sentence.  See 18 U.S.C. § 3553(a)(1), (a)(2)(C).  The defendant's criminal history traces back to 1987, and includes numerous larceny crimes (PSR ¶¶ 37-56).

---

[2] It bears repeating that these totals only reflect expenditures from February 2009 to March 2013, which is only about half of the eight-year period of the offense conduct.  This time period was selected for analysis because the bank statements reflected the defendant's spending habits in great detail for these years.

The defendant points out that her prior convictions are more than 20 years old (defendant's sentencing memo, ECF no. 13, at 2), but this fact has already been incorporated into the guideline sentencing range, and thus, into the government's recommendation.  Because her prior sentences were imposed more than ten years before the commencement of the offenses underlying this federal case, the prior sentences do not count toward her criminal history score.  The defendant has a criminal history score of zero, which results in the lowest possible recommended sentence for her crime.  (PSR ¶¶ 57-58).

The small fines and terms of probation that were imposed by the state courts in her prior cases did not deter her from committing more crimes, including the federal crimes for which she is now being sentenced.  In other words, probation simply has not deterred this particular defendant.

*General deterrence*

Finally, the need to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct justify a prison sentence.  See 18 U.S.C. § 3553(a)(2)(A)-(B).  The Social Security Administration pays Old-Age, Survivors, and Disability benefits to more than 59 million recipients.  See Social Security Beneficiary Statistics, http://www.ssa.gov/oact/STATS/OASDIbenies.html.  With so many beneficiaries, opportunities for fraud are numerous; the agency cannot constantly audit all 59 million beneficiaries.  Although the agency uses initiatives such as the Medicare Non-Utilization Project to identify fraud (PSR ¶ 11), the Courts also have a role to play.  By imposing prison terms for those who steal from Social Security, the Court can deter others from pursuing the same conduct.

The importance of generally deterring theft from the Social Security system was clearly articulated by Judge Wolf in a recent sentencing.  The defendant in that case had little or no

criminal history and stole Social Security benefits intended for his deceased father. In sentencing the defendant to a prison term, this Court explained:

> Somehow you had the misconception that you wouldn't get caught; that if you just confessed, you wouldn't be prosecuted; and if you were convicted, you wouldn't be sent to prison. And it's part of my responsibility to send a message not just to you . . . but to the millions of other people who could steal from Social Security that that's a miscalculation. You will get caught. You will get prosecuted. You will get convicted, and you will have to go to prison . . . .

See Statement of Reasons, Docket no. 24, United States v. Griffith, No. 15-cr-10001-MLW.

Judge Young also articulated this point when sentencing a defendant to a prison term in a Social Security fraud case. The defendant, who had little or no criminal history, stole Social Security benefits intended for his deceased mother. Judge Young stated, "it seems to this court that there must be a prison sanction because we are providing benefits to so many hundreds of thousands of people and it simply must be understood that the theft of these benefits is a crime that carries a prison sentence." See Transcript of Sentencing Hearing, Docket no. 38-1, United States v. Oldham, No. 13-cr-10224-WGY (D. Mass.).

## *Conclusion*

For the foregoing reasons, the United States urges the Court to adopt the government's recommended sentence.

Respectfully submitted,

CARMEN ORTIZ
United States Attorney

Date: September 4, 2015          By:     */s/ Timothy Landry*
                                         Special Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                            */s/ Timothy Landry*
                                            Special Assistant U.S. Attorney